UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAREFREE CARTAGE, INC., FOR THE USE OF GREAT WEST CASUALTY COMPANY, an Illinois Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 06 C 2644<br>Judge Joan H. Lefkow |
| "K" LINE D/B/A "K" LINE AMERICA, INC., a Michigan corporation, INTERNATIONAL TRANSPORTATION SERVICE, INC., a California corporation, HUSKY TERMINAL AND STEVEDORING, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) | Hon. Arlander Keys, Magistrate Judge<br><br>Jury Trial Demanded |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Carefree Cartage, Inc. for the use of Great West Casualty Company ("Carefree"), has filed suit against defendants "K" Line d/b/a "K" Line America, Inc. ("'K' Line"), Husky Terminal and Stevedoring, Inc. ("Husky") and International Transportation Service, Inc. ("ITS") (collectively, "defendants"). Carefree alleges that defendants are responsible for damaging a container of epichlorohydrin, a hazardous substance, which caused the container to spill when it arrived in Illinois and created an environmental hazard that Carefree had to clean up. Carefree filed a four-count complaint in Illinois state court for violations of Illinois law. "K" Line removed the case. Dkt No. 1. Husky and ITS have now moved to dismiss for lack of personal jurisdiction.[1] Dkt. Nos. 29, 32.

---

[1] "K" Line America Inc. is not contesting jurisdiction and has answered the complaint.

1. **Personal Jurisdiction Standard**

If challenged by a defendant, the plaintiff has the burden of showing that the court's exercise of personal jurisdiction is proper. *George S. May Int'l Co. v. Xcentric Ventures, LLC*, 409 F. Supp. 2d 1052, 1055 (N.D. Ill. 2006) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)). The court may receive and consider affidavits to determine whether it has personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citing *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)). When the court rules on the basis of written materials and without conducting an evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction. *Id.* In evaluating whether this standard has been satisfied, the court resolves all disputes concerning the relevant facts in favor of the plaintiff unless they are controverted by an affidavit of the defendant to which the plaintiff has not responded. *Id.* (citing *Nelson*, 717 F.2d at 1123); *First Nat. Bank v. El Camino Resources, Ltd.*, 447 F.Supp.2d 902, 906 (N. D. Ill. 2006).

Federal courts look to the law of their forum state to determine whether the exercise of personal jurisdiction over a non-resident defendant is proper. *George S. May*, 409 F. Supp. 2d at 1055 (citing *Edelson v. Ch'ien*, 352 F. Supp. 2d 861, 865-66 (N.D. Ill. 2005)); *see also* Fed. R. Civ. P. 4(e). Here, jurisdiction is premised on 735 Ill. Comp. Stat. 5/2-209(a)(2), which allows Illinois courts to exercise jurisdiction over a party who "commi[ts]... a tortious act within this State." Illinois also allows for jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2-209(c).[2]

---

[2] Because Carefree does not allege that Husky or ITS is subject to general jurisdiction in Illinois, the court will address only the allegations relevant to specific jurisdiction.

2

In addition to considering Illinois's statutory grant of personal jurisdiction, the court must also consider whether exercising jurisdiction would be consistent with state and federal guarantees of due process. *George S. May*, 409 F. Supp. 2d at 1055 (citing *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004)). The Seventh Circuit has determined that this inquiry is essentially the same under both the Illinois Constitution and the Constitution of the United States and that therefore only one due process inquiry is necessary. *Id.* (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002); *Edelson*, 352 F. Supp. 2d at 866).

The due process inquiry begins with the well known "minimum contacts" rule from *Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (citations omitted): "Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" In *Hanson v. Denckla*, the Court explained that "minimum contacts" requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958). The purposeful establishment of "minimum contacts" remains the "constitutional touchstone." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985). It ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the unilateral actions of another party who claims some relationship with the defendant. *Burger King*, 471 U.S. at 475 (citations omitted); *Hanson*, 357 U.S. at 253.

3

Foreseeability that the defendant's action might cause harm in the forum is not sufficient by itself for the exercise of personal jurisdiction. *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 559, 566, 62 L. Ed. 2d 490 (1980). Instead, the crucial inquiry is whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being haled into court there. *Central States*, 230 F.3d at 943 (citing *Burger King*, 471 U.S. at 474; *RAR*, 107 F.3d at 1277); *World-Wide Volkswagen*, 444 U.S. at 297. Furthermore, the fact that the defendant benefits financially due to an indirect relationship with the forum state is also insufficient to support a finding of personal jurisdiction unless the benefits are the result of a "constitutionally cognizable contact with that state." *World-Wide Volkswagen*, 444 U.S. at 299.

Once minimum contacts have been found to exist, the analysis moves on to determine whether the exercise of jurisdiction would comport with "fair play and substantial justice." *Central States*, 230 F.3d at 943 (citing *Burger King*, 471 U.S. at 476-77). The court considers, among other things, the "burden on the defendant" to litigate in the forum, "the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and the shared interest of the several States in furthering fundamental substantive social policies." *Purdue Research Found.*, 338 F.3d at 781 (citing *Burger King Corp.*, 471 U.S. at 477).

4

2. **Facts**

After a long trip from Thailand to Bridgeview, Illinois, a container full of the hazardous chemical epichlorohydrin spilled, creating an environmental hazard and requiring Carefree to undertake and pay for an emergency response. The epichlorohydrin was ordered by an Illinois company that is not a party to this lawsuit, and supplied by a Thai company that is also not a party. Plaintiff's Verified Complaint ("PVC"), at ¶¶ 34, 46, 47. "K" Line was the owner of the containers and the boats that were used to transport the drums of epichlorohydrin across the Pacific ocean to a port in Tacoma, Washington, where it arrived on November 6, 2004. PVC ¶¶ 16, 48-51, 54-63. "K" Line operates a number of U.S. companies, including ITS and Husky.[3] PVC ¶¶ 17-19. ITS was a party to the lease agreement for "K" Line's terminal at the port in Tacoma. ITS's Reply Supp. Mot. Dismiss, at 2. Husky, which is owned in part by ITS, was operating "K" Line's terminal when the epichlorohydrin arrived. PVC ¶¶ 26, 28, 31, 32, 33; ITS's Mot. Dismiss, at 3, Ex. 1, at ¶ 9; Husky's Mot. Dismiss, at 2, Ex. 1, at ¶¶ 4-7.

Husky employees unloaded the epichlorohydrin at the port. PVC ¶ 64, Husky's Mot. Dismiss, at 2, Ex 1, at ¶¶ 24-25. During the discharge, they damaged one of the containers. PVC ¶ 65; Pl.'s Mem. Opp'n. Mot. Dismiss ("Carefree's Mem."), at 1-2. The damage was documented in an "Unusual Occurrence Report." PVC ¶¶ 78-80; Carefree's Supp. Resp., Ex. 1. Husky opened the container and inspected it, observing and documenting a dent on the outside of the container and at least some superficial damage to the drums inside. PVC ¶¶ 66-69, 77;

---

[3] Husky is a Delaware corporation, owned in part by ITS, with its principal place of business in Tacoma, Washington. Husky's Mot. Dismiss, Ex. 1, at ¶ 3. ITS is a California corporation with its principal place of business in Long Beach, California. ITS's Mot. Dismiss, Ex. 1, at ¶ 3.

Husky's Reply Supp. Mot. Dismiss ("Husky's Reply") Ex. 1, at ¶¶ 4-5; Carefree's Supp. Resp., Ex. 1.[4] Husky placed a new, high security seal on the container and did not attempt to stop it from continuing on its journey. PVC ¶ 75; Husky's Reply, Ex 1, at ¶¶ 12-13, Carefree's Supp. Resp., Ex. 1. The Port of Tacoma loaded the container onto a train bound for Illinois. PVC ¶ 84; Husky's Mot. Dismiss, Ex. 1, at ¶ 26, Husky's Reply, Ex. 1, at ¶ 13.

The container arrived in Illinois on November 19, 2004, at the Union Pacific rail yard in North Lake, Illinois. PVC ¶ 85. The operator on duty there noted external damage to the container. PVC ¶ 89. Carefree picked up the container from the rail yard and brought it to the Chicagoland Cartage and Warehousing Terminal in Bridgeview, Illinois. PVC ¶¶ 90, 95-98. When it was opened by Chicagoland Cartage employees, it was evident that some epichlorohydrin had spilled. PVC ¶¶ 101, 104. Carefree arranged and paid for the necessary emergency response procedures. PVC ¶¶ 13, 107-108. The emergency response team found that 54 out of the 80 drums in the container were damaged. PVC ¶ 124.

Husky and ITS are not alleged to have performed any acts in Illinois or to have transacted any business in Illinois or with anyone in Illinois in relation to this case, and both specifically deny doing so. Husky's Mot. Dismiss, at 3, Ex. 1, at ¶¶ 18-19, 29; ITS's Mot. Dismiss, at 2-3, Ex. 1, at ¶¶ 16-17. Neither Husky nor ITS directed, controlled, or determined the destination of the epichlorohydrin. Husky's Mot. Dismiss, at 3, Ex. 1, at ¶ 21; ITS's Mot. Dismiss, at 3, Ex. 1, at ¶ 19. Although Carefree's ultimate allegation is that the two companies caused injury in Illinois, all of their relevant actions took place in Washington.

---

[4] Carefree argues in its brief that Husky knew that the drums were "crushed and leaking" but it is not supported by the exhibits it cites and is contradicted by Husky's affidavit.

3.  **Discussion**

The question of whether a court has personal jurisdiction over a non-resident stevedore has come up before. Husky cites several cases, and this court has found several more, in which a plaintiff was injured while unloading cargo that allegedly was mishandled by a non-resident stevedore. While there is some disagreement, the majority of these courts have found that absent exceptional circumstances, they do not have personal jurisdiction over the stevedore because of a lack of minimum contacts with the forum state. *See, e.g., Couch v. Cro-Marine Transport, Inc.*, 1991 U.S. Dist. Lexis 16098 (C.D. Ill. April 26, 1991); *Eggear v. Shibusawa Warehouse Co.*, 2001 WL 267881 (E.D. Pa. March 19, 2001); *In re Nat'l Marine, Etc.*, 1998 U.S. Dist. Lexis 1115 (E.D. La. Jan. 30, 1998); *Irby v. Isewan Terminal Serv. Co. Ltd.*, 1991 U.S. Dist. Lexis 18480 (E.D. Pa. Dec. 18, 1991); *but cf. CSX Transp., Inc. v. Preussag Int'l Steel Corp.*, 201 F. Supp. 2d 1228 (M.D. Ala. 2002); *Friend v. Internor Trade Inc.*, 1987 WL 7855, at *1 (E.D. Pa. March 16, 1987) (noting the existence of additional factors, including a possible agency or estoppel theory and the fact that the defendant's subsidiary had submitted to jurisdiction in the forum); *Muller v. Temura Shipping Co., Ltd.*, 629 F. Supp. 1024, 1028 (E.D. Pa. 1986) (noting that it was a "close case" even though the defendant knew that the cargo was bound for the forum state).[5]

---

[5] The court has reviewed the hazardous waste dumping cases cited by Carefree, such as *Chatham Steel Corp. v. Brown*, 858 F. Supp. 1130 (N.D. Fla. 1994), but finds them to be inapplicable to this case due to the contrast between a stevedore and a company that has generated hazardous waste and intentionally sends it across state lines to get rid of it. The court has also reviewed the cases cited by Husky and ITS regarding personal jurisdiction in "economic loss" cases and finds those to be inapplicable as well because the damages alleged in this case are not merely "economic." *Stinnes Corp. v. Kerr-McGee Coal Corp.*, 722 N.E.2d 1167, 1174, 309 Ill. App. 3d 707, 717 (Ill. App. Ct. 1999).

In *Couch, Eggear, Nat'l Marine, and Irby*, all of the plaintiffs alleged that they were injured while unloading cargo that was improperly loaded by a non-resident stevedore. *Couch*, 1991 U.S. Dist. Lexis 16098, at *2; *Eggear*, 2001 WL 267881, at *1; *Nat'l Marine*, 1998 U.S. Dist. Lexis, at *2; *Irby*, 1991 U.S. Dist. Lexis, at *1. In denying personal jurisdiction, the courts focused on a few common points. The stevedores had not purposefully directed any acts toward the forum states, *Couch*, 1991 U.S. Dist. Lexis 16098, at *30, and had no interest or control over the ultimate destination of cargo that they loaded and unloaded. *Eggear*, 2001 WL 267881, at *2-*3, *Irby*, 1991 U.S. Dist. Lexis 18480, at *5-*6. These courts held that a finding of jurisdiction cannot turn on the fortuity of whether or not the carrier or shipper happened to inform the stevedore of the destination of the ship or whether the stevedore was unfortunate enough to have observed a bill of lading when loading or unloading the cargo. *Eggear*, 2001 WL 267881, at *3, *Irby*, 1991 U.S. Dist. Lexis 18480, at *8, *Couch*, 1991 U.S. Dist. Lexis 16098, at *33. Awareness that the cargo was going to the forum state was not purposeful conduct directed towards the forum state on the part of the stevedore. *Couch*, 1991 U.S. Dist. Lexis 16098, at *30, *Irby*, 1991 U.S. Dist. Lexis, at *6-*7.

This court agrees with the reasoning in these cases, and it applies equally here. Stevedores are paid to load and unload cargo, a job that begins and ends in the port. Although one could argue that the stevedores benefit from the general demand for goods that originates in a destination state, which thereby creates more business for them at the port, that connection is too tangential to support a finding that they purposefully availed themselves of the benefits of doing business in that state. *Burger King*, 271 US 462, 473-74 (citing *Kulko v. California Superior Ct.*, 436 U.S. 84, 96, 98 S. Ct. 1690, 1699, 56 L. Ed. 2d 132 (1978)). Husky's ability to foresee

8

that harm might occur in Illinois due to reckless treatment of cargo in Washington is not enough by itself for this court to exercise jurisdiction over Husky.[6] Instead, Carefree needed to allege that Husky received some benefit from Illinois, that it enjoyed the privilege of conducting activities here or that it was protected by Illinois laws. Because Carefree cannot do so, this court in turn cannot say that Husky had the requisite minimum contacts with this state to support an exercise of personal jurisdiction over Husky.

With respect to ITS, Carefree alleges that ITS leased and operated the terminal and was responsible for any hazardous waste spills that occurred there, including the spill at issue here. Carefree's Mem, at 1, 3-4; PVC ¶¶ 26, 28, 65, 66, 68, 75, 83-84. However, ITS has contradicted those allegations in an affidavit, stating that it did not operate the terminal. ITS's Mot. Dismiss, at 3, Ex. 1, at ¶ 28. ITS and Husky agree that Husky operated the terminal. ITS's Mot. Dismiss, at 3, Ex. 1, at ¶ 27; Husky's Mot. Dismiss, Ex. 1, at ¶ 9.[7] Carefree has alleged no other supported facts showing that ITS was involved with the handling of the epichlorohydrin or had any other relevant contacts with Illinois, and ITS has specifically sworn that it had no such involvement. ITS's Mot. Dismiss, Ex. 1, at ¶¶ 18, 22. Therefore, Carefree has also failed to allege the necessary minimum contacts between ITS and Illinois to support personal jurisdiction over ITS in this court.

---

[6] The parties disagree regarding whether Husky and ITS knew that the epichlorohydrin was destined for Illinois. As the court has found, however, that fact is not determinative.

[7] Because Husky does not have minimum contacts with Illinois, even if ITS were responsible for Husky's actions, it still would not be subject to personal jurisdiction in Illinois.

9

## 4. Order

For the reasons discussed above, the motions to dismiss for lack of personal jurisdiction filed by Husky [#29] and ITS [#32] are both granted.

Dated: November 2, 2006                ENTER:

*[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge